**James Robert GANNAWAY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 05–89–01242–CR.**

Court of Appeals of Texas,
Dallas.

Nov. 18, 1991.

Allan Fishburn, Dallas, for appellant.

Karen R. Wise, Dallas, for appellee.

Before BAKER, LAGARDE, and KINKEADE, JJ.

## OPINION

BAKER, Justice.

A jury convicted James Robert Gannaway of murder. The jury sentenced him to life imprisonment. In five points of error, appellant contends that the trial court erred in admitting: (1) his statement because it was involuntary and the product of an illegal arrest; (2) evidence of a polygraph test; (3) the statement of the witness Terre Rice; and (4) evidence gained through an illegal search warrant. We reverse and remand.

### THE MURDER

Terre Rice was staying with her boyfriend Steven Highway[1] at appellant's apartment. Appellant allegedly left the apartment the night of the murder with Highway and the victim. Appellant and Highway planned to beat the victim because they believed he was a homosexual. When appellant and Highway returned to the apartment, appellant allegedly admitted shooting the victim. Rice gave a statement to police, stating appellant admitted shooting the victim and the details of the murder.

### TERRE RICE'S STATEMENT

In his fourth point of error, appellant contends the trial court erred in admitting Rice's statement. Rice's written statement related that appellant said he shot the victim. Appellant, in his own statement, asserted Highway shot the victim. He contends the trial court should have excluded Rice's statement because she refused to

---

1. Highway was also known as "Howe" and "Howell."

testify at trial about certain matters. He contends the trial court denied him any meaningful cross-examination. He argues this violated his sixth amendment rights to confrontation and due process, denying him a fair trial.

### 1. The Trial

The State called Rice as a witness. She answered some preliminary questions and admitted she gave a statement to police. After an objection by appellant, the trial court appointed an attorney to represent her. She invoked her fifth amendment rights. The State then offered Rice testimonial immunity. She continued to refuse to testify about who was there when she returned to appellant's apartment after the shooting took place.[2] She did answer some of the State's questions about police questioning and the statement she gave the police. The State called the police officers who questioned Rice to the stand and asked them if her statement was voluntary. They said that it was. The State again called Rice to the stand. She answered some more questions about the night of the murder. When asked who was at the apartment after the murder took place, she again refused to answer.

The court held a sub rosa hearing. The State questioned Rice further. She agreed that some of the facts in her statement were true and some were false. She continued to refuse to answer certain questions about the night of the murder while answering others. On the court's instruction, in "summary" form, the prosecutor asked Rice the following:

Is this true, [appellant] was tuning in Richardson channels, I guess police channels on the police scanner? [Appellant] motioned for Steve to listen to the scanner and at one point described how he shot the [victim]. The description was that he, [appellant], told the [victim] to go set a stick by the tree. [Appellant] then said he shot [the victim] in the back of the head. [The victim] turned to face [appellant], and [appellant] shot him again. [The victim] tried to run, [appellant] ran behind him and shot him again and again. He said it reeled [the victim] around and he shot his eye out of the socket. After [appellant] described this he beat the gun with the hammer and chisel in the bedroom, then put it in a plastic bag and took it off in his car for fifteen minutes to dispose of it. Is that true or not true, that statement you gave the Richardson Police Department? You told me last Friday that was true, is that true or not?

At that point, Rice said, "I can't answer that question."

Appellant then began cross-examining Rice. After eight or ten questions about the voluntariness of her statement—which she answered—the court said, "Stop, this is repetitious. The court is holding the witness in contempt, bailiff. You will be there until you decide to testify. Take her along." At that point, appellant complained the trial court denied him the right to complete cross-examination, leaving the impression that if the State offered the statement into evidence, the statement would carry more weight than justified because of the lack of impeachment.

The State then called the police officer who had taken Rice's statement. The State asked several questions about the statement and offered it into evidence. At that point, the following occurred:

DEFENSE COUNSEL: Your Honor, I would object to this document and offering it into evidence, because I was not allowed, I will not be allowed to cross-examine to try to impeach the person making that statement.

Second, I would not be allowed to use prior inconsistent statements from any source on this particular matter to impeach her, or given the opportunity—

THE COURT: You can use any part of this statement that you want to.

DEFENSE COUNSEL: From the person making the statement, and that would

---

**2.** In her statement, Rice said appellant admitted shooting the victim when they returned to the apartment.

give greater weight to the document that it is entitled to and what it is doing in effect is going behind, back behind—

\* \* \* \* \* \*

DEFENSE COUNSEL: That this document is not being offered for the fact that the statement was made, but that the statement, but the fact that the statement, to—well, it is to circumvent the matters contained within the document which denies the Defense adequate, and adequate chance to contradict through the maker, to confront the maker of the document.

The court admitted the statement with certain portions deleted. The court recalled the jury. The State did not read the statement to the jury. Appellant cross-examined one of the police officers about Rice's statement. He asked whether the officer was aware that the police found the murder weapon in Highway's room. He also asked whether Rice's statement mentioned Highway's name. The State later sought to admit all of Rice's statement with no deletions because appellant had "opened the door" making the portion concerning Highway admissible.[3] Appellant then objected, stating: "It is still inconsistent with that, it is still hearsay on hearsay and isn't admissible on other reasons." The trial court sustained the objection and allowed only the edited statement to go to the jury.

### 2. Applicable Law

■■■■ A party may attack a witness's credibility by cross-examination directed towards revealing possible biases, prejudices, or ulterior motives of the witness as they relate directly to issues or personalities in the case on trial. *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1109, 39 L.Ed.2d 347 (1974). The partiality of a witness is subject to exploration at trial and is "always relevant as discrediting the witness and affecting the weight of his testimony." *Davis*, 415 U.S. at 316, 94 S.Ct. at 1110 (citations omitted). The exposure of a witness's motivation in testifying is a proper and important function of the constitutionally protected right of cross-ex-

amination. *Davis*, 415 U.S. at 315, 94 S.Ct. at 1109; *see also* Tex.R.Crim.Evid. 612(b). The trial court must give latitude to the accused to show any fact demonstrating ill feeling, bias, motive, and animus upon the part of any witness testifying against him. *Evans v. State*, 519 S.W.2d 868, 871 (Tex. Crim.App.1975); *Greene v. State*, 651 S.W.2d 948, 950–51 (Tex.App.—Dallas 1983), *aff'd*, 676 S.W.2d 359 (Tex.Crim.App. 1984).

### 3. Application of Law to Facts

■■■■ The trial court denied appellant the opportunity to cross-examine Rice to show bias or motive to testify falsely. This was error. *See Evans*, 519 S.W.2d at 871. The trial court not only permitted, but encouraged, the State to read the statement aloud to the jury as a "summary-form" question. The witness's failure to answer the question did not waive the error. *See Harris v. State*, 642 S.W.2d 471, 479 (Tex. Crim.App.1982). The trial court also allowed the State to introduce Rice's statement implicating appellant in the murder although Rice did not say the statement was wholly true, did not fully testify, and was not fully cross-examined about the statement. We hold this too was error. *See Evans*, 519 S.W.2d at 871. Admitting Rice's statement was a "back-door" way for the State to get facts into evidence which Rice refused to testify about at trial. We cannot find beyond a reasonable doubt that appellant was not harmed. Tex. R.App.P. 81(b)(2). The statement was the only evidence that appellant,[4] rather than Highway, shot the victim. We sustain appellant's fourth point of error. This point of error is dispositive of the appeal. We do not deem it necessary to consider appellant's remaining points of error.

We reverse the trial court's judgment. We remand the cause to the trial court for further proceedings consistent with this opinion.

■■■■■

---

**3.** The deleted portion apparently contained additional hearsay statements.

**4.** In his statement, appellant said Highway shot the victim.