Sean Thomas **STALEY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 12–93–00016–CR.

Court of Appeals of Texas,
Tyler.

Aug. 30, 1994.

Kenneth Nash, Tyler, for appellant.

Edward J. Marty, Asst. Dist. Atty., Tyler, for appellee.

HOLCOMB, Justice.

A jury convicted Appellant of attempted murder, sentenced him to 20 years in prison, and assessed a $10,000 fine. Appellant appeals in five points of error. In the first point, Appellant challenges the sufficiency of the evidence to support his conviction. In the last four points, he contends that the court erred when it: (1) admitted prior inconsistent witness statements into evidence; (2) permitted the State to improperly impeach a witness; (3) admitted a video tape of the victim recuperating in a rehabilitation center, and; (4) denied his motion for mistrial complaining about a comment made by the prosecutor during final arguments. We will affirm.

On March 21, 1992 at approximately 7:25 P.M., Jimmy Sowell (Sowell) was walking from a Nu–Way convenience store to his apartment. Appellant, who had been to an all-afternoon party, struck Sowell and knocked him to the ground. Appellant then raised a concrete block over his head, dropped the block on Sowell's face, and fled the scene. Four juveniles, Richard Jackson, Dexter Alexander, Broderick Crawford, and Jerian Johnson, observed the assault.

At trial, several police officers testified. A paramedic, an emergency room doctor, and a neurosurgeon also described Sowell's injuries. At the time of trial, Sowell was still confined to a rehabilitation center in Dallas recuperating from his injuries.

In his first point of error, Appellant contends that the evidence was insufficient because the State failed to prove that Appellant acted with the specific intent to commit murder. Citing Section 6.04(a), he argues that the State did not show a causal connection between Appellant's conduct and Sowell's injuries. *See* TEX.PENAL CODE ANN. § 6.04(a) (Vernon 1992). At trial, Dr. Guy Danielson, a local neurosurgeon, testified that as a result of Appellant's actions, Sowell had a skull fracture, facial bone fractures, and a brain hemorrhage. On Cross-examination, Dr. Danielson admitted that Sowell also had a pre-existing condition called chronic hydrocephalus.

Hydrocephalus is brain damage that is congenital, and results in a loss of speech, hearing, vision, and equilibrium. Sowell suffers from a loss of speech and equilibrium, and Dr. Danielson was unable to tell the jury the precise percentage of Sowell's physical limitations that were attributed to his congenital condition, and the percentage that were attributed to the closed head injury. As we understand it, Appellant argues that the State must be able to show a specific causal connection between Sowell's injuries as a result of Appellant's actions and differentiate those injuries from Sowell's pre-existing medical condition. To support his position, Appellant cites Section 6.04(a), which reads as follows:

> (a) A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient.

TEXAS PENAL CODE ANN. § 6.04(a) (Vernon 1992). Appellant also cites *Robbins v. State* to show that under Section 6.04(a), a "but for" causal connection must be established between Appellant's conduct and the resulting harm to the victim. *Robbins v. State,* 717 S.W.2d 348 (Tex.Cr.App.1986). Should concurrent causes of an injury occur, Appellant argues that the evidence may be insufficient to show that Sowell's injuries were caused by Appellant's conduct, and were actually caused by Sowell's chronic congenital condition. However, the facts in *Robbins* are distinguishable from this case.

In *Robbins,* the defendant was driving his truck at a high rate of speed and hit an

automobile, killing both occupants. The defendant was convicted of involuntary manslaughter. The State offered sufficient evidence to prove that the defendant was intoxicated at the time of the accident and that such intoxication caused the collision and death of the victims. The defendant admitted he was intoxicated, but he argued, and attempted to prove, that the accident was due to his exhaustion, rather than his intoxication.

In the court's charge, it instructed the jury to decide whether the death of the victims was caused by the defendant's intoxication. If so, the jury was instructed to find the defendant guilty of manslaughter. If the jury found that the deaths were caused by the defendant's exhaustion, they were instructed to find the defendant not guilty of manslaughter. However, when the court instructed the jury to consider any concurrent causes such as intoxication and exhaustion, the court's instruction was incomplete under Section 6.04(a). The court's charge instructed the jury to find that the defendant's intoxication alone *caused* the death of the victims, and then instructed them to convict the defendant if his intoxication only "contributed" to the death of the victims, without explaining the limits of contribution of concurrent causes as required by Section 6.04(a). The charge gave conflicting, inconsistent, instructions to the jury. The appellate court agreed that the charge was confusing and erroneous, and remanded the case to the trial court.

There are two pertinent areas in which *Robbins* differs from this case. First, Appellant did not request that the jury be instructed on concurrent causation, nor did he object to the court's charge. Second, the State had only to prove that Appellant had the intent to cause serious bodily injury and was not required to prove that Appellant had a specific intent to kill Sowell. *See* TEX.PENAL CODE ANN. §§ 1.07(a)(34), 15.01, 19.02, 19.02(a)(1–3); *Baldwin v. State*, 538 S.W.2d 615, 616 (Tex.Cr.App.1976); *Garcia v. State*, 541 S.W.2d 428, 430 (Tex.Cr.App.1976). Therefore, we turn to the crucial issue of whether the evidence was sufficient to support Appellant's conviction of attempted murder.

In determining whether Appellant's conviction is supported by sufficient evidence, we view the evidence presented at trial in the light most favorable to the verdict. *See Flournoy v. State*, 668 S.W.2d 380, 383 (Tex.Cr.App.1984). The critical inquiry is whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bonham v. State*, 680 S.W.2d 815, 819 (Tex.Cr.App. 1985), *cert. denied*, 474 U.S. 865, 106 S.Ct. 184, 88 L.Ed.2d 153. Therefore, the full responsibility is on the jury to weigh the evidence, to resolve conflicts in the testimony, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979). If there is sufficient evidence in the record to establish that the defendant is guilty beyond a reasonable doubt, and the jury believes the evidence, the appellate court cannot reverse the judgment on a sufficiency point. *See Soto v. State*, 864 S.W.2d 687, 691 (Tex.App.—Houston [14th Dist.] 1993, pet. ref'd). To prove attempted murder, the evidence must be sufficient to show that Appellant intended to cause serious bodily injury, that he committed an act that amounted to more than "mere preparation," and that the act could have caused the death of an individual. *Garcia*, 541 S.W.2d at 430. "Serious bodily injury" occurs when an injury creates a substantial risk of death, serious permanent disfigurement, or impairment of a body member or organ. *See* TEX.PENAL CODE ANN. § 1.07(a)(34). The evidence presented was ample for the jury to conclude that Appellant attempted to murder Sowell.

At trial, the State presented the testimony of witnesses to Sowell's assault. Jackson testified that after Appellant hit Sowell with his fist, he took a cinder block, raised it over his head, and dropped it on Sowell's head. Several officers described the block used by Appellant to hit Sowell as being heavy and made of concrete or cement. Sergeant Laman and Detective Russworm (a 15 year veteran with the Tyler Police Department), both testified that the cinder block was capable of causing serious bodily injury and death. Officer Carhan testified that when he arrived at the scene, he saw the

victim laying in a pool of blood, with his face smashed, indented, and so disfigured that he was unrecognizable. Paramedic Gary Simmons said Sowell was unconscious, and his eyes were swollen shut as a result of the traumatic blow to his head. The emergency room physician testified that Sowell had a fractured skull, an injury to his brain stem, and a blood clot in his brain stem. He also testified that the injuries sustained by Sowell were consistent with a 40 to 50 pound brick being thrown on his head, and were independent from any pre-existing congenital condition before this incident. After viewing the evidence in the light most favorable to the verdict, we conclude that the jury could have found beyond a reasonable doubt that Appellant intended to commit serious bodily injury to Sowell with a deadly weapon. Point of error one is overruled.

In his second point, Appellant contends that the trial court erred when it admitted prior inconsistent written statements. On the same evening of the offense, Dexter Alexander and Broderick Miller, two of the four juvenile witnesses of the crime, gave video-taped statements to Detective Russworm. In their video-taped statements, they described the assault, identified Appellant by name, and initialed mug shots of Appellant as the person who assaulted Sowell. At trial, however, they changed their stories and said that they had lied to the police, that they did not see the assault, and that they arrived at the scene after the assault occurred. Appellant objected to the video-taped statements used by the State to impeach the witnesses, arguing that the State did not lay the proper predicate to admit such evidence. *See* TEX. R.CRIM.EVID. 612(a). On appeal, he complains that the court abused its discretion by admitting the video tape into evidence. To the contrary, the State argues that Alexander and Miller's testimony consisted of qualified statements, partial admissions of prior statements, and partial denials of prior statements; therefore, the State argues that the court properly admitted the video taped interviews to impeach the juveniles. We agree. Rule 612(a) reads in part:

(a) **Examining witness concerning prior inconsistent statement.** In examining a witness concerning a prior inconsistent statement made by him, whether oral or written, and before further cross-examination concerning, or extrinsic evidence of such statement may be allowed, the witness must be told the contents of such statement and the time and place and the person to whom it was made, and must be afforded an opportunity to explain or deny such statement.

.        .        .        .        .

If the witness *unequivocally* admits having made such statement, extrinsic evidence of same shall not be admitted. (Emphasis added.)

TEX.R.CRIM.EVID. 612(a).

The rule of admissibility of prior inconsistent statements should be liberally construed and the trial judge has the discretion to receive any evidence that gives promise of exposing a falsehood. *See Aranda v. State*, 736 S.W.2d 702, 707 (Tex.Cr.App.1987). A witness' prior inconsistent statement is admissible for purposes of impeachment. *Boyd v. State*, 774 S.W.2d 37, 40 (Tex.App.—Beaumont 1989, pet. ref'd); *Miranda v. State*, 813 S.W.2d 724, 735 (Tex.App.—San Antonio 1991, pet. ref'd). If a witness only qualifiedly or partially admits to making a prior inconsistent statement, the statement may be used to impeach him. *McGary v. State*, 750 S.W.2d 782, 786 (Tex.Cr.App.1988); *see also, Wyatt v. State*, 38 Tex.Crim. 256, 257, 42 S.W. 598, 599 (1897). While Alexander and Miller were cross-examined, the State carefully questioned them regarding the time, the place, and the persons to whom the statements were made, as well as the contents of each statement. The record reflects that both Miller and Alexander admitted at trial that they had previously witnessed the incident between Appellant and Sowell. However, they denied that they had previously made any statement that they saw Appellant pick up the block and throw it at Sowell. Therefore, they did not admit their prior statements to police, nor did they unequivocally deny their prior statements. We hold that the State substantially met the predicate requirements of TEXAS RULE OF CRIMINAL EVIDENCE 612(a), and the court did not abuse its discretion when it admitted the

video tape into evidence. Appellant's second point of error is overruled.

In point of error number three, Appellant claims the trial court erred when it permitted the State to improperly impeach a defense witness. During his case-in-chief, Appellant had called Pondosa Johnson, as an alibi witness, to testify that Appellant was at another location at the time of the assault. The court admitted evidence that the witness was currently under a felony indictment, was being prosecuted in the same court as Appellant, and, as a result, may have a bias against the State. Appellant objected, complaining that the predicate for such evidence had not been properly laid, and the evidence did not fall within the ambit of Rule 612(b) of the TEXAS RULES OF CRIMINAL EVIDENCE. The State argues that the court properly allowed the prosecutor to cross-examine the witness in front of the jury in an effort to affect the weight the jury gives to Johnson's testimony. We agree with the court's determination that the evidence was relevant. Rule 612(b) provides in pertinent part:

> (b) **Examining witness concerning bias or interest.**
>
> In impeaching a witness by proof of circumstances or statements showing bias or interest, on the part of such witness, and before further cross-examination concerning, or extrinsic evidence of, such bias or interest may be allowed, the circumstances supporting such claim ..., must be made known to the witness, and the witness must be given an opportunity to explain or to deny such circumstances....

TEX.R.CRIM.EVID. 612(b).

A party may attack the credibility of a witness by cross-examination when it directly relates to an issue or a party so that any possible prejudices or ulterior motives of the witness may be exposed at trial. *See Gannaway v. State*, 823 S.W.2d 675, 678 (Tex.Cr.App.1991). Subject to reasonable restrictions imposed by the court, either party is entitled to show any relevant fact that may tend to establish ill feeling, bias, motive, interest, or animus on the part of any witness. *Steve v. State*, 614 S.W.2d 137, 139 (Tex.Cr.App.1981); *Green v. State*, 676 S.W.2d 39 (Tex.Cr.App.1984).

When attacking the credibility of a witness, it is clear that a party may introduce into evidence that a witness has been convicted of a crime if the conviction is a felony conviction of public record, or if the conviction involves an act of moral turpitude. *See* TEX.R.CRIM.EVID. 609. However, the Court of Criminal Appeals has stated that under limited circumstances, the State may also admit evidence of pending charges filed against a witness if the State can show that such evidence establishes prejudice, interest, or bias of the witness in testifying as he did. *See Alexander v. State*, 740 S.W.2d 749, 763 (Tex.Cr.App.1987), quoting *Murphy v. State*, 587 S.W.2d 718, 722 (Tex.Cr.App.1979). The trial court has the discretion to determine how the bias of a witness is proven and we give considerable deference to the court's decision. *See Gutierrez v. State*, 681 S.W.2d 698, 706 (Tex.App.—Houston [14th Dist.] 1984, n.w.h.). In considering whether the evidence is relevant, the court must determine whether the negative attributes of the evidence substantially outweigh the probative value. *Id.*

In this case, the court gave a limiting instruction in its charge to consider the evidence of Johnson's pending indictment only to establish bias. This instruction adequately mitigated any harm to Appellant. In addition, Johnson's testimony was also discredited by other evidence offered during the trial. The testimony of Appellant's two witnesses directly contradicted a portion of Johnson's testimony as to the time of day that Appellant was at a party. We therefore hold that the court did not abuse its discretion when it allowed the State to question Johnson regarding any bias or prejudice that he may have against the State as a result of his indictment. Point of error three is overruled.

In his fourth point, Appellant complains that the court erred when it admitted into evidence a video tape of Sowell that was taken at the rehabilitation center. He maintains that the video tape was irrelevant under Rule 402, its prejudicial effect outweighed the probative value under Rule 403, and the court ignored the procedure to be

used in admitting such tape as proscribed in *Montgomery v. State.* *See* Tex.R.Crim.Evid. 402 and 403; *see also, Montgomery v. State,* 810 S.W.2d 372, 375–79 (Tex.Cr.App.1990). The State argues that the video was competent, material, and relevant evidence because Sowell's injuries and condition were an important issue in this case.

 The determination as to the admissibility of photographic evidence rests largely in the discretion of the trial judge. *See Martin v. State,* 475 S.W.2d 265, 267 (Tex.Cr.App.1972). If it is relevant to an issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to inflame the minds of the jury. *See Montelongo v. State,* 644 S.W.2d 710, 714 (Tex.Cr.App.1980). The testimony of eyewitnesses to the attack, the police officers on the scene, the paramedic who treated Sowell's injuries, and the other treating physicians all gave testimony describing Sowell's condition. It is difficult to conceive, after extensive witness testimony concerning the nature and extent of Sowell's injuries, how a video tape of Sowell during his recovery period would heighten the passion of the jury to the detriment of Appellant. We hold, therefore, that the court was correct when it found that Sowell's condition was sufficiently related to the incident and that the probative value of the video tape outweighed any prejudicial effect. The fourth point of error is overruled.

In point of error five, Appellant claims that the State's closing argument was so improper and so egregious that he was denied a fair trial. During the State's final argument, the prosecutor commented that "If Sean Staley was innocent, he wouldn't be here. He's not. We hear about this guilty man walking around on the streets...." At this point, Appellant objected that the State's argument violated the court's instruction to the jury to consider Appellant "not guilty" until the State had proven his guilt beyond a reasonable doubt. The court sustained the objection, instructed the jury to disregard the prosecutor's comments, and denied Appellant's motion for mistrial. The prosecutor then went on to say, "Let me straighten out what I'm telling you. He wouldn't be here

with four eyewitnesses identifying him if he weren't guilty." Appellant argues that the prosecutor's argument was a subtle effort to convince the jury that Appellant was not presumed to be innocent. This argument is without merit.

 A prosecutor is permitted to argue in the general areas of summation of the evidence, reasonable deductions to be drawn from the evidence, answers to the arguments of the defense, and pleas for law enforcement. *Albiar v. State,* 739 S.W.2d 360, 362 (Tex.Cr.App.1987). An argument which might exceed these bounds will not constitute reversible error, unless, in light of the record as a whole, it is extreme or manifestly improper, violates a mandatory statute, or injects new facts harmful to the accused. *Todd v. State,* 598 S.W.2d 286, 296–97 (Tex.Cr.App.1980); *McKay v. State,* 707 S.W.2d 23, 36 (Tex.Cr.App.1985), *cert. denied,* 479 U.S. 871, 107 S.Ct. 239, 93 L.Ed.2d 164 (1986). Although the prosecutor made a subtle inference that Appellant's mere presence in the courtroom was indicative of his guilt, this argument, taken in context of the record as a whole, does not appear manifestly improper. The trial court's instruction to the jury to disregard comments made by the prosecutor was ample to cure any harm to Appellant. The fifth point of error is overruled.

The judgment of the trial court is affirmed.