IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1523-05






ANTHONY PETRUCCELLI V. STATE



 



ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


CAUSE NO. 10-03-34-CR IN THE 82ND JUDICIAL DISTRICT COURT

OF FALLS COUNTY



 


 Cochran, J., filed an opinion concurring in the refusal to grant appellant's
petition for discretionary review.



CONCURRING OPINION


 I withdraw my previous opinion filed on February 15, 2006, and substitute this one.

 Appellant was convicted of aggravated assault of his wife, Carol, and sentenced to
seventy years' imprisonment. On appeal, he contended, inter alia, that the trial court erred
in admitting a "day in the life" video depicting Carol's activities in a rehabilitation facility. 
The court of appeals found that, while admission of the video during the guilt phase of the
trial was error, it was harmless error. (1) Appellant petitioned this Court for discretionary
review to determine whether "[t]he Tenth Court erred in holding that the video tape of
inadmissible victim impact evidence viewed by the jury in the guilt phase was not harmful
error." (2) After reviewing the record, I agree that the court of appeals correctly concluded that
the erroneous admission of the video tape was harmless, but just barely.

 Because the use of victim impact evidence such as this video-especially during the
guilt phase of a trial-is so fraught with danger, I add the following remarks.

 The thirty-five minute long video depicts Carol as she works with various specialists
at her rehabilitation facility. The court of appeals provided a detailed description of the
highly emotional scenes, which showed Carol's inability to walk or dress herself without
assistance, (3) her visual and mental impairment, her inability to determine what day of the year
or week it is, or even to recognize pictures of her own children and grandchildren. (4) 

 Both at trial and in its appellate brief, the State contended that the tape was admissible
as evidence of the extent of Carol's injuries. At trial, the State argued that the video was
admissible "to show that Carol sustained a serious bodily injury that resulted in the protracted
loss or impairment of the function of any bodily member or organ." (5) After a brief hearing
on the issue, the trial court overruled appellant's Rule 403 (6) objection without explanation. 
 In finding the video inadmissible, the court of appeals stated that it was "highly
prejudicial," and "contain[ed] no information that would have any tendency to make more
or less probable the existence of any fact of consequence at the guilt stage of trial." (7) Well,
it did have some probative value; it certainly did show that Carol suffered serious bodily
injury from which she will probably never fully recover. In spades. With a hammer. 

 But that fact had already been proven by copious other, less emotionally-fraught,
evidence. First, the State offered several photographs taken shortly after Carol's arrival at
the hospital; these photographs clearly depicted her extensive injuries. Second, the State
questioned Carol's emergency-room physician, her treating neurosurgeon, and the
neuropsychologist in charge of her rehabilitative care. All of these witnesses testified to the
extent of Carol's injuries; her neuropsychologist testified regarding the long-term prognosis
of her rehabilitation. 

 Furthermore, the issue of "serious bodily injury" was not a contested issue at trial. 
Had the extent of Carol's injuries been disputed, or had the cross-examination of the medical
experts been focused upon their findings that she suffered long-term or permanent
debilitation, the Rule 403 calculus of probative value would, of course, be different. While
it is certainly true that otherwise probative evidence cannot (and should not) be excluded
merely because it is unpleasant or may excite the jury's emotions, (8) the extent of its emotional
appeal surely affects the balance between probative value and prejudicial effect when other
evidence has already proven the point. This is precisely the type of evidence that Rule 403
was designed to guard against.

 However, I must also agree that the court of appeals was not clearly mistaken in
concluding that admission of the video was harmless error in this particular case. The State
presented very strong evidence of appellant's guilt. Appellant admitted to numerous
individuals, including hospital employees, his neighbor, and the police, "that he did or might
have slapped Carol around a few times, backhanded her, hit her, or accidentally hit her." (9) 
Further, expert medical testimony indicated that the severe injuries Carol sustained were
consistent with being beaten. Thus, the court of appeals concluded that, although the issue
was close, the court could not say it was in "'grave doubt' about whether the error affected
the outcome." (10) It is indeed a close call, because this is precisely the type of evidence which
threatens the accuracy and integrity of the jury's deliberative process if the evidence of guilt
is seriously contested. (11) 

 Thus, it is with some hesitation that I join the Court in refusing appellant's petition
for discretionary review.

Filed: March 22, 2006

Publish

1. Petruccelli v. State, 174 S.W.3d 761, 769-70 (Tex. App.-Waco 2005). 
2. Appellant presented two issues for review. The first issue dealt with the evidentiary
sufficiency of a prior conviction from another state for use of enhancement purposes. That issue,
while interesting, does not raise serious concerns for me.
3. One section shows her using a walker to navigate through a room that is decorated for
Christmas.
4. Petruccelli, 174 S.W.3d at 766-67. The court of appeals further noted that

 it is a portrayal of not only Carol's physical therapy, but also of her emotional and
psychological state of mind as she struggles with daily living. While we hesitate to label
the videotape a "day in the life" video, sometimes found in civil cases, we note that the
video does give an impression of what Carol's day to day life must be like. The video
portrays the physical and emotional effect the crime of aggravated assault had upon
Carol, and therefore constitutes victim-impact evidence.

 Id. at 767-68 (citations omitted).
5. The State relied heavily on Staley v. State, in its argument that the video was admissible.
888 S.W.2d 45 (Tex. App.-Tyler 1994, no pet.). In Staley, the court of appeals stated that "[i]t is
difficult to conceive, after extensive witness testimony concerning the nature and extent of [the
victim's] injuries, how a video tape of [the victim] during his recovery period would heighten the
passion of the jury to the detriment of Appellant." Id. at 51. However, this reasoning is contrary
to the purpose of Rule 403 and to our more recent ruling in Salazar v. State, in which we
cautioned "[c]ourts must guard against the potential prejudice of 'sheer volume,' barely relevant
evidence, and overly emotional evidence." 90 S.W.3d 330, 336 (Tex. Crim. App. 2002). 
6. Tex. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value
is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or
misleading the jury, or by consideration of undue delay, or needless presentation of cumulative
evidence").
7. Petruccelli, 174 S.W.3d at 768-69.
8. See Erazo v. State, 144 S.W.3d 487, 502 (Tex. Crim. App. 2004).
9. Petruccelli, 174 S.W.3d at 765.
10. Id. 769 (citations omitted).
11. Even in civil cases, there is considerable concern with the admission of "day in the life"
video recordings because of their potential for manipulation, exaggeration, and inflammatory
emotion. See Gregory T. Jones, Lex, Lies, and Videotape, 18 U. Ark. Little Rock L.J. 613, 
639-40 & n.135(1996) (collecting cases admitting and excluding "day in the life" videotapes in
civil proceedings on the basis of unfair prejudice and cumulative effect); see generally J. B.
Weinstein & Margaret A. Berger, Weinstein's Evidence ¶ 1001(2)[103], at 1001-43
(1993) (noting the need for heightened scrutiny when analyzing the cumulative nature of
videotapes).